**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ISMAEL SALAM, individually and on behalf of all others similarly situated, | ) ) | Case No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| COMMUNITY COLLEGE DISTRICT NO. 508, COUNTY OF COOK AND STATE OF ILLINOIS and BLACKBOARD, INC., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

Plaintiff Ismael Salam ("Plaintiff") brings this Class Action Complaint against Defendants Community College District No. 508, County of Cook and State of Illinois ("City Colleges") and Blackboard, Inc. ("Blackboard") (collectively the "Defendants") on behalf of himself and all others similarly situated, and complains and alleges upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### I.    NATURE OF THE ACTION

1.      Defendant City Colleges is the largest community college system in Illinois and one of the largest in the nation, with 5,700 faculty and staff serving more than 115,000 students annually at seven colleges and six satellite sites, including: Richard J. Daley College; Kennedy-King College; Malcolm X College; Olive-Harvey College; Harry S Truman College; Harold Washington College; and Wilbur Wright College.  City Colleges also oversees: the Washburne Culinary Institute; the French Pastry School; the Parrot Cage Restaurant at South Shore Cultural

Center; the Sikia Banquet Facility; five Child Development Centers; the Center for Distance Learning; the Workforce Institute; the public broadcast station WYCC TV Channel 20; and radio station WKKC FM 89.3.

2.      Defendant Blackboard, Inc. describes itself as the "leading mass notification system for higher ed."[1]  Blackboard's mass notification system allows clients, including City Colleges, to contact students (and potential students) via phone, text, email and social media.  On its website, Blackboard recognizes its clients' interest in "[b]oosting revenue by attracting new students," and offers marketing and recruiting services in order to accomplish this goal.

3.      In an effort to market to potential students and increase enrollment, Defendants made (or directed to be made on City Colleges' behalf) unsolicited phone calls, and sent (or directed to be sent on its behalf) unsolicited text messages, *en masse* to the wireless telephones of Plaintiff and each of the members of the Class without prior express written consent in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA") and the Automatic Telephone Dialers Act, 815 ILCS 305/1, *et seq.* ("ATDA").[2]

4.      On information and belief, the calls Plaintiff received promoting City Colleges' products and services were sent via Blackboard's mass notification system.

5.      Neither Plaintiff nor the other Class members ever consented in writing, authorized, desired or permitted Defendants to call their wireless telephones.

6.      By making such unauthorized phone calls, Defendants caused Plaintiff and each of the Class members actual harm, including the aggravation and nuisance that necessarily

---

[1] *See* Blackboard, Mass Notifications, http://www.blackboard.com/mass-notification/blackboard-connect.aspx (last visited Oct. 5, 2015).
[2] For ease of reading, telephone calls and text (or SMS) messages are referenced collectively as "calls" throughout this Complaint.

accompanies the receipt of unsolicited phone calls, and the monies paid to their wireless carriers for the receipt of such calls.

7.      In order to redress these injuries, Plaintiff seeks an injunction requiring Defendants to cease all unsolicited and unconsented-to wireless call activities and an award of statutory damages to the Class members under the TCPA and ATDA, together with costs and reasonable attorneys' fees.

## II.      JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 because they arise under the laws of the United States.

9.      This Court also has subject matter jurisdiction under 28 U.S.C. § 1332(d) because: (a) at least one member of the putative class is a citizen of a state different from Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action.

10.      This Court has personal jurisdiction over Defendants under the Illinois long-arm statute, 735 ILCS 5/2-209, because Defendants engaged in solicitation or service activities within the State of Illinois.  This Court also has personal jurisdiction over City Colleges because it maintains its principal place of business in this state, and over both Defendants because a substantial a portion of the wrongdoing alleged in this Complaint took place in and/or was directed toward this State.  Defendants, by making phone calls *en masse* into this State soliciting business, or by directing that such calls be made on their behalf, have sufficient contacts in this State to render the exercise of jurisdiction by this Court permissible.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in this District, and because Defendant City Colleges resides and maintains its principal place of business within this District.

### III.     PARTIES

*Plaintiff*

12.     Plaintiff Ismael Salam is an individual domiciled in Cook County, Illinois. For purposes of 28 U.S.C. § 1332, Plaintiff is a citizen of the State of Illinois.

*Defendants*

13.     Defendant City Colleges is a community college system located at 226 W. Jackson, Chicago, IL 60606.  For purposes of 28 U.S.C. § 1332, City Colleges is a citizen of the State of Illinois.

14.     Defendant Blackboard, Inc. is a North Carolina corporation with its principal place of business at located 650 Massachusetts Ave, NW 6th Fl., Washington DC 20001-3796. For purposes of 28 U.S.C. § 1332, Blackboard is a citizen of the States of North Carolina and Washington, D.C.

### IV.     FACTUAL BACKGROUND

15.     Companies have employed advance technologies that make it easier to market their products and services. According to a recent report examining class actions under the TCPA in the Northern District of Illinois:

> ***Autodialers (also known as robocalls) automatically deliver a prerecorded message to a list of telephone numbers, and thus remove the need for human representatives***. These predictive dialers were developed to find better pacing (scheduling of dialing attempts) by collecting and analyzing data on the proportion of call attempts that are answered, durations of time from call initiation to answer, and durations of service. The technology was designed to minimize both the time that telemarketers must spend waiting between conversations and

545883.1

amount of abandoned calls experienced by consumers.[3]

16.      In addition, marketers who have felt stymied by federal laws limiting solicitation by telephone, fax machine, and e-mail in recent years have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

17.      One of the most prevalent alternatives is bulk advertising through so-called Short Message Services. "Short Message Services" or "SMS" is a messaging system that allows for the transmission and receipt of short text messages (usually no more than 160 characters) to and from wireless telephones.

18.      SMS messages are directed to a wireless device using the telephone number assigned to the device. When an SMS message is successfully made, the recipient's wireless phone rings, alerting him or her that a message is being received. As wireless telephones are inherently mobile and are frequently carried on their owner's person, SMS messages may be received by the called party virtually anywhere in the world.

19.      According to a study conducted by the Pew Research Center, "Spam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds—from coupons to phishing schemes—sent directly to user's cell phones."[4]  In fact, "57% of adults with cell phones have received unwanted or spam text messages on their phone."[5]

20.      Unlike more conventional advertisements, SMS message advertisements can actually cost their recipients money because wireless phone users must pay their wireless service

---

[3] Institute for Consumer Antitrust Studies, Loyola University Chicago School of Law, The Telephone Consumer Protection Act of 1991: Adapting Consumer Protection to Changing Technology 7 (Fall 2013) (emphasis added). The report "was made possible through a cy pres distribution from a class action involving the TCPA in the Northern District of Illinois under the supervision of Senior Judge William Hart and Magistrate Judge Morton Denlow." *Id.* at 2.

[4] Amanda Lenhart, Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens, Pew Research Center (2010), http://www.pewinternet.org/Reports/2010/Cell-Phones-and-American-Adults.aspx (last visited October 5, 2015).

[5] *Id.*

545883.1

providers either for each text message call they receive or incur a usage allocation deduction to their text messaging plan, regardless of whether the message is authorized.

21.     Due to the growing concern over unwanted SMS message advertisements, the Federal Communications Commission ("FCC") updated its rules on consent.

22.     As of October 16, 2013, senders of SMS message advertisements for goods or services, as well as those placing telephone calls via an autodialer, must obtain the recipient's prior express written consent.

***Defendants' Unsolicited Calls to Plaintiff***

23.     In or around April 2015, Plaintiff's wife completed an online inquiry at the City Colleges website.   In filling out the inquiry, Plaintiff's wife provided Plaintiff's wireless telephone number to City Colleges as a method of contact.

24.     On May 14, 2015, at 2:11 p.m. CST, Plaintiff received a text message that read:

> CITYCOLLEGESCHICAGO: You are subscribed to receive text alerts.  Reply HELP for help, STOP CCC to cancel.  Msg&data rates may apply.

Plaintiff's telephone listed the sending number as "23177."  A true and correct copy of the text message is attached hereto as **Exhibit A**.  On information and belief, the 23177 number is an SMS "short code" registered to Defendant Blackboard.

25.     That same afternoon, Plaintiff replied "STOP CCC."  *See* Exhibit A.  Within one minute, Plaintiff received a response confirming that he had been "unsubscribed from CCC for CITYCOLLEGESCHICAGO and will no longer receive messages or charges."  *Id.*

26.     Four days later, on May 18, 2015 at 1:38 p.m., Plaintiff received another text message from the 23177 number encouraging Plaintiff to apply to become a City Colleges

student and to enroll in summer and/or fall classes. A true and correct copy of this text message is attached hereto as **Exhibit B**.

27.     Then, on May 29, 2015, at 4:14 p.m., Plaintiff received a call on his wireless telephone from the number (312) 553-2642. When Plaintiff answered, an artificial, pre-recorded voice informed him that summer classes were currently enrolling at City Colleges of Chicago. The recording did not provide any option to opt out from receiving such solicitation calls.

28.     On August 11, 2015, at 5:00 p.m. and 5:03 p.m., respectively, Plaintiff received two calls back-to-back from the same (312) 553-2642 number. A screenshot reflecting these calls is attached hereto as **Exhibit C**. Like the previous call, both calls employed an artificial, pre-recorded voice to promote City Colleges' products and services. Again, no option to opt-out was presented to Plaintiff on either call.

29.     In response to these August 11 calls, Plaintiff called the City Colleges main line at (312) 553-2500 and left a voicemail asking to be removed from its call list. Plaintiff also sent an email to "info@ccc.edu" requesting to be removed from the list.

30.     On August 12, 2015, "Tanya" returned Plaintiff's voicemail and informed him that she would pass his request along to the appropriate person.

31.     On September 4, 2015, Plaintiff received another text message from the 23177 number, soliciting Plaintiff to apply for and enroll in fall classes at City Colleges. A true and correct copy of this text message is attached hereto as **Exhibit D**.

32.     On September 18, 2015, Plaintiff received yet another text message from the 23177 number, again soliciting Plaintiff to apply for and enroll in fall classes at City Colleges. A true and correct copy of this text message is attached hereto as **Exhibit E**.

-7-

545883.1

33. On September 25, 2015 at 12:29 p.m., Plaintiff received another call from the (312) 553-2642 number that was substantially similar, if not identical, to the two calls he received on August 11, 2015. A screenshot reflecting this call is attached hereto as **Exhibit F**.

34. Therefore, on information and belief, Defendants have made and continue to make calls to Plaintiff's and the Class members' wireless phones without prior express consent, and/or following valid and unequivocal withdrawal of consent, as part of its advertising campaign.

35. On information and belief, Defendants made, or had made on City Colleges' behalf, the same or substantially the same calls *en masse* to a list of thousands of wireless telephone numbers or randomly generated phone numbers.

36. On information and belief, Defendants made these calls, or had them made, to Plaintiff and the Class members using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

37. Plaintiff and the Class members either never consented to, requested, or otherwise desired or permitted Defendants to call their wireless phones, or expressly withdrew such consent prior to receiving calls from or on behalf of Defendants.

38. On each of the calls made to Plaintiff's wireless telephone, Defendants were required to provide an opt-out mechanism, pursuant to 47 C.F.R. 64.1200(b)(3).

39. Defendants, however, failed to provide an opt-out mechanism in each of their calls to Plaintiff, except for the first text message received on May 14, 2015.

545883.1

### Additional Complaints Regarding Defendant's Telephone Solicitations

40.     Plaintiff is far from the only person to have received unsolicited calls promoting City Colleges.  Indeed, a basic internet search for the number (312) 553-2642 reveals that United States residents – both within the State of Illinois and elsewhere – receive these calls on a recurring basis.  For example, the following is a non-exhaustive listing of consumer complaints about the number (all *sic*):

- "city colleges of chicago b.s.";[6]

- "I said no to them last week and they still call me";[7]

- "Got a call from this number. I live in boston, not sure why chicago is calling me telling me their schools are closed due to snow...";[8]

- "Haven't answered past 3 days but they've been calling me 4 days in a row now - I don't use City of Chicago schools and don't care to know their schedule";[9]

- "I know I will never hire someone from Chicago City Colleges if the college itself cannot remove a phone number from their call list after numerous requests for months";[10]

- "I got the same call but no one spoke to me. It is annoying that the college makes these 'test calls'";[11]

- "How do you get them to stop calling and how did the get my number?";[12]

- "I have not even gone to this school. Why do they keep calling me?!?"[13]

---

[6] *See* http://800notes.com/Phone.aspx/1-312-553-2642 (last visited October 5, 2015).
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *See* http://whocallsme.com/Phone-Number.aspx/3125532642 (last visited October 5, 2015).
[12] *Id.*
[13] *Id.*

## V.     CLASS ALLEGATIONS

41.     Plaintiff brings this action, as set forth below, on behalf of himself and as a class action pursuant  to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All individuals in the United States to whose wireless telephones Defendants, or someone acting on their behalf, made calls and/or sent SMS messages in the absence of express consent of the called party using an automatic telephone dialing system (the "Class").

Excluded from the Class are Defendant and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and any immediate family members thereof.

42.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

43.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).**  The members of the Class are so numerous that individual joinder of all Class members is impracticable.   On information and belief, there are thousands of consumers who have been damaged by Defendants' wrongful conduct as alleged herein.   The precise number of Class members and their addresses is presently unknown to Plaintiff, but may be ascertained from Defendants' books and records.   Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

44.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

545883.1

a.     whether the equipment Defendants and/or an entity acting on Defendants' behalf used to place the calls in question was an automatic telephone dialing system as contemplated by the TCPA;

b.     whether Defendants used a prerecorded or artificial voice in making the calls in question;

c.     whether Defendants' conduct constitutes a violation of the TCPA;

d.     whether the equipment Defendants (or someone on Defendants' behalf) used to make the calls in question was an autodialer as contemplated by the ATDA;

e.     whether the equipment Defendants (or someone on Defendants' behalf) used to make the calls in question involved a prerecorded message as contemplated by the ATDA;

f.     whether Defendants' conduct constitutes a violation of the ATDA;

g.     whether Plaintiff and the Class are entitled to actual, statutory, or other forms of damages, and other monetary relief and, in what amount(s);

h.     whether Plaintiff and the Class are entitled to treble damages based on the willfulness of Defendants' conduct; and

i.     whether Plaintiff and the Class are entitled to equitable relief, including but not limited to injunctive relief and restitution.

45.    **Typicality – Federal Rule of Civil Procedure 23(a)(3).**  Plaintiff's claim is typical of the other Class members' claims because, among other things, all Class members were comparably injured through the uniform prohibited conduct described above.

46.    **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the other Class members he seeks to represent; he has retained counsel competent and experienced in complex commercial and class action litigation; and Plaintiff intends to prosecute this action vigorously. The interests of the Class members will be fairly and adequately protected by Plaintiff and his counsel.

545883.1

47. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

48. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims, so it would be impracticable for Class members to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.   CLAIMS ALLEGED

### COUNT I
### Violation of the TCPA, 47 U.S.C. § 227

49. Plaintiff re-alleges and incorporates by reference paragraphs 1-48 as if fully set forth herein.

50. Defendants and/or their agents made, or directed to be made on their behalf, unsolicited phone calls, and sent unsolicited SMS messages, to the wireless telephone number of Plaintiff and the other Class members *en masse* without their express written consent.

545883.1

51.     Defendants made the calls, or had them made on their behalf, using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

52.     Defendants and/or their agents, or an entity acting on behalf of Defendants, utilized equipment that placed the phone calls to Plaintiff and other Class members simultaneously and without human intervention.

53.     By making the unconsented-to phone calls to Plaintiff and the Class, Defendants have violated 47 U.S.C. § 227(b)(1)(A)(iii).  As a result of Defendants' unlawful conduct, the Class members suffered actual damages in the form of monies paid to receive the calls on their wireless phones and under Section 227(b)(3)(B) are each entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

54.     Moreover, Defendants violated 47 CFR § 64.1200 by failing to provide an opt-out mechanism in each of their calls to Plaintiff, except for the first text message received on May 14, 2015.  Plaintiff and the class thus assert a cause of action under 47 U.S.C. § 227(b)(3)(A)-(C) for Defendants' violation of 47 CFR § 64.1200.

55.     Should the Court determine that Defendants' conduct was willful or knowing, the Court may, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other Class members.

### COUNT II
### Violation of the ATDA, 815 ILCS 305/1
### (On behalf of the ATDA Class)

56.     Plaintiff re-alleges and incorporates by reference paragraphs 1-48 as if fully set forth herein.

57.     Under the ATDA, it is unlawful to use an autodialer:

-13-

a. To dial numbers determined by successively increasing or decreasing integers. *See* 815 ILCS 305/15(c); *see also* 815 ILCS 305/30(a) (a violation of § 15 is a violation of the ATDA);

b. In a manner that impedes the function of any caller ID when the caller's equipment is capable of allowing the display of the caller's number. *See* 815 ILCS 305/15(d); *see also* 815 ILCS 305/30(a) (a violation of § 15 is a violation of the ATDA); and

c. To play a prerecorded message. *See* 815 ILCS 305/30.

58.     Defendants and/or their agents made phone calls to the telephone numbers of Plaintiffs and the other Class members *en masse* without their prior express consent.

59.     Defendants made the calls, or had them made on Defendants' behalf, using equipment that is capable of storing telephone numbers and which is programmed to sequentially or randomly access the stored telephone numbers in order to automatically connect a telephone with a recorded message.

60.     Defendants made the calls to solicit goods and/or services.

61.     Accordingly, Defendants and/or their agents violated the ATDA in three ways.

62.     **First**, Defendants and/or their agents used an autodialer to dial numbers determined by successive increasing or decreasing integers.

63.     **Second**, Defendants and/or their agents made the calls in a manner that impedes the caller ID of cellular telephones of Plaintiffs and the Class.

64.     **Third**, Defendants' calls play a recorded message.

65.     By making the calls to Plaintiff and the Class, Defendants violated the ATDA. As a result of Defendants' unlawful conduct, the Class members suffered actual damages in the form of monies paid to receive the calls on their cellular telephones, and under 815 ILCS 305/30, are each entitled to trebled actual damages, statutory damages in the amount of $500 per violation, costs, and reasonable attorneys' fees.

-14-

## VII.     JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all

claims in this Complaint so triable.

## VIII.     REQUEST FOR RELIEF

WHEREFORE, Plaintiff Ismael Salam, individually and on behalf of the Class, requests

that the Court enter an Order as follows:

A.     Certifying the Class as defined above, appointing Plaintiff Ismael Salam as the representative of the Class, and appointing his counsel as Class Counsel;

B.     Awarding actual and statutory damages;

C.     Requiring Defendants to cease all wireless phone call activities initiated without express written consent, and otherwise protecting the interests of the Class;

D.     Awarding reasonable attorneys' fees and costs; and

E.     Awarding such other and further relief that the Court deems reasonable and just.


Dated: October 8, 2015                                      Respectfully submitted,

                                                            ISMAEL SALAM, individually and on
                                                            behalf of all others similarly situated

                                               By:     /s/ Katrina Carroll
                                                       One of the Attorneys for Plaintiff
                                                       And the Proposed Putative Class

Katrina Carroll
kcarroll@litedepalma.com
Kyle A. Shamberg
kshamberg@litedepalma.com
LITE DEPALMA GREENBERG, LLC
Chicago Office
211 West Wacker Drive
Suite 500
Chicago, IL 60606
312.750.1265

-15-

# EXHIBIT A



9:05 PM

May 14

23177

CITYCOLLEGESCHICAGO: You are subscribed to receive text alerts. Reply HELP for help, STOP CCC to cancel. Msg&data rates may apply.

2:11 PM

STOP CCC

4:16 PM

BbConnect Notify Alerts: You have been unsubscribed from CCC for CITYCOLLEGESCHICAGO and will no longer receive messages or charges.

888-599-2720

4:16 PM

160/1




Type message

# EXHIBIT B

9:05 PM

23177

4:16 PM

BbConnect Notify Alerts: You have been unsubscribed from CCC for CITYCOLLEGESCHICAGO and will no longer receive messages or charges.
888-599-2720

4:16 PM

**Today**

Apply at bit.ly/cccapp1 to become a City Colleges student in 2015. Enroll for summer classes by June 3 & fall classes by Aug 17. Learn more at bit.ly/cccadms

1:38 PM

160/1

Type message

# EXHIBIT C

5:04 PM

Call details

Add to contacts

Call +1 312-553-2642

Chicago, IL

Incoming call
Tuesday, August 11, 2015, 5:03 PM
0 mins 46 secs

Incoming call
Tuesday, August 11, 2015, 5:00 PM
0 mins 52 secs

# EXHIBIT D







5:47 PM

23177

...become a City Colleges student in 2015. Enroll for summer classes by June 3 & fall classes by Aug 17. Learn more at bit.ly/cccadms

1:38 PM

Today

Earn a valuable education at City Colleges. The fall 12 week session begins 9/21. Enroll by 9/14. Apply at bit.ly/cccapp1 and visit bit.ly/cccadms for more info

5:29 PM

160/1

Type message

# EXHIBIT E



11:25 AM

23177

Sep 4

Earn a valuable education at City Colleges. The fall 12 week session begins 9/21. Enroll by 9/14. Apply at bit.ly/cccapp1 and visit bit.ly/cccadms for more info

5:29 PM

Today

Earn a valuable education at City Colleges! The fall 8 week session begins 10/19. Enroll by 10/12. Apply bit.ly/cccapp1 and visit bit.ly/cccadms for more info.

11:24 AM




160/1



Type message

# EXHIBIT F



12:30 PM

Call details

Add to contacts

Call 1 312-553-2642

Chicago, IL

Incoming call
Friday, September 25, 2015, 12:29 PM
0 mins 13 secs

Incoming call
Tuesday, August 11, 2015, 5:00 PM
0 mins 52 secs